**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3990-16T1

GLENN R. WORRELL,

     Plaintiff-Appellant,

v.

JUNE KINGMAN,

     Defendant-Respondent.

_____

     Submitted September 18, 2018 – Decided September 28, 2018

     Before Judges Geiger and Firko.

     On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0229-05.

     Keith, Winters & Wenning, LLC, attorneys for appellant (Brian D. Winters, on the brief).

     June Kingman, respondent pro se.

PER CURIAM

     Plaintiff Glenn R. Worrell appeals from a February 24, 2017 order requiring him to pay defendant June Kingman tax free alimony of $261,949 at

the rate of $1000 per week, ordering the Probation Department to intercept any federal or state tax refunds Worrell may receive, and awarding Kingman $2590 in attorney's fees; and an April 28, 2017 order denying reconsideration and other relief. For the following reasons, we affirm in part and vacate and remand in part for further proceedings.

Worrell and Kingman were married in September 1994, and were divorced on April 15, 2010. While the divorce action was pending, they entered into a matrimonial settlement agreement (MSA), the terms of which were incorporated into the dual judgment of divorce (JOD). Pertinent to this appeal, the JOD required Worrell to pay Kingman $200,000 "tax-free in lieu of support" in five payments: $10,000 within ninety days, $40,000 by May 27, 2010, $50,000 by May 27, 2011, $50,000 by May 27, 2012, and $50,000 by May 27, 2013; with five percent simple interest thereon. Upon satisfaction of that obligation, Kingman was required to transfer her interest in an office building in Wall, New Jersey to Worrell.

The JOD also contained the following contingent waiver of alimony provision:

> 14. Each party shall waive alimony from the other party. However, defendant's waiver of alimony is conditioned upon plaintiff's full compliance with the terms of this Judgment. If for any reason, including

A-3990-16T1

bankruptcy by plaintiff, that plaintiff does not comply with the terms of this Judgment in full defendant shall receive alimony to the extent necessary to make sure she receives 100 percent of what she is entitled to pursuant to this Judgment. . . .

The JOD also addressed responsibility for counsel fees:

15. Each party shall be responsible for their own counsel fees up to this date the agreement was placed on the record. If either party violates the terms of this Judgment and the other party is successful in court in enforcing this Judgment, then the party found in violation shall be responsible for the other party's counsel fees and costs that were the result of having to go to court to enforce the Judgment.

A subsequent order secured the alimony to be paid to Kingman by a $200,000 mortgage on the Wall office building and a lien on a pending lawsuit. The order also denied the parties' reciprocal counsel fee applications.

Worrell failed to make any of the required payments to Kingman. As a result, Kingman moved to enforce the JOD, and sought an order requiring Worrell to pay her $275,000 (inclusive of interest) by wage execution through the probation department at the rate of $1000 per week. The motion also sought enforcement through intercepts of Worrell's federal and state income tax refunds, the issuance of a bench warrant for Worrell's arrest in the event he missed two payments, and an award of $3000 in counsel fees and costs for the motion.

Worrell was ordered to pay her $300 per week pendente lite support but did not comply. He fell almost $30,000 in arrears. She also alleged Worrell cancelled her health insurance and destroyed her personal property. She contended the MSA was structured to ensure she received the settlement, and "would survive any changes in [Worrell's] financial status, including bankruptcy on his part." Kingman stated she was forced to file bankruptcy due to "Hurricane Sandy and an overwhelming onslaught of litigation."[1]

Worrell opposed the motion, alleging he suffered a significant adverse change in his financial circumstances affecting his real estate business and other assets. He blamed the failure of his business and the loss of the building that housed it largely on Kingman's alleged "outward interference with the business and building."

Claiming he was unable to make the mortgage payments on his home since 2009, a mortgage foreclosure judgment was entered against him in the amount of $1,287,000 with a sheriff's sale scheduled for March 6, 2017. Other property in Manasquan was also foreclosed upon. He contended he earned $16,521.11 in

---

[1] Kingman filed a Chapter 7 bankruptcy on July 31, 2013, listing estimated assets of $16,325 and unsecured liabilities of $744,114.55. Her bankruptcy schedules stated she was unemployed, earned no income, and listed a monthly budget of $1,135.

2013, $17,000 in 2014, $18,600 in 2015, and $19,620 in 2016, and also rented out rooms in his house for an unspecified amount.

Worrell also claimed Kingman failed to return his personal property worth $250,000 in violation of a court order. Kingman denies she was obligated by the JOD to turnover any such property. Worrell also claimed a court-ordered income evaluation concluded Kingman had the potential to earn $60,000 annually, but she chose to do volunteer work and sail yachts instead.

Worrell did not file any current or prior family case information statement (CIS) or submit any income tax returns, pay stubs, or other financial information to the trial court. Nor did he disclose he had an ownership interest in a real estate brokerage firm named Synergy International Real Estate in which he was broker of record.

After hearing oral argument, the trial court issued an order and twelve-page statement of reasons granting the motion. The judge denied the request to issue a bench warrant for Worrell's arrest if he missed two payments, but otherwise granted the relief Kingman sought, except for reducing the counsel fee award to $2950.

The trial court found Worrell did not offer a compelling reason to warrant modification of the JOD and, therefore, his alimony obligation should be

A-3990-16T1

enforced. With regard to Worrell's claim he is unable to afford the alimony obligation, the court found he had not provided any proof his income decreased, noting he had not submitted any tax returns, W-2s, or other documentation substantiating any reduction in income.

With regard to Worrell's claim he is unable to satisfy the obligation because he has suffered financial downturn since 2013, the court noted he would have satisfied the entire obligation by that time if he had complied with the terms of the JOD. The court concluded he should not be rewarded by his failure and refusal to comply.

The trial court was not persuaded by Worrell's claim Kingman obstructed matters preventing the payments, finding no credible evidence in support of that claim. The court also noted Worrell had not sought relief from the JOD despite his familiarity with the legal process.

The court calculated the accrued interest to be $61,949, not $75,000 as claimed by Kingman. The court ordered Worrell to pay that sum at the rate of $1000 per week, finding Worrell provided no evidence to substantiate his claim he was unable to pay at that rate. The court indicated the payment rate it set was similar to the $50,000 per year payment rate set by the JOD.

A-3990-16T1

With regard to counsel fees, the trial court recited the factors enumerated in Rule 5:3-5(c) and Mani v. Mani, 183 N.J. 70, 94 (2005), but did not undertake an analysis of those factors except for discussing Worrell's willful refusal to pay his obligation and cryptically noting Kingman did not have the same "financial position" as Worrell. The court also stated "the reasonable time and hourly fee to be imposed in this case is [ten] hours and $250 respectively," without further elaboration.

Subsequently, Worrell moved to: (1) reconsider the February 24, 2017 order; (2) require a plenary hearing; (3) declare Kingman estopped from claiming any rights to the MSA; (4) declare Kingman's claims barred by the doctrines of laches and "quasi-laches"; (5) permit Worrell to recover damages from Kingman for destruction of property; (6) modify the MSA; (7) modify the MSA based upon loss of assets caused by Kingman; and (8) award him counsel fees and costs. The trial court issued an April 28, 2017 order and statement of reasons denying the motion in its entirety. As to reconsideration, the court stated its prior order "did not establish an alimony obligation. It enforced the terms of the parties' Judgment of Divorce."

The trial court made detailed findings and expressed conclusions of law rejecting the equitable defenses raised by Worrell which we need not recount.

7

Worrell has not briefed the issues of the denial of his application to modify the MSA, for an award of damages, and for an award of counsel fees. We deem those issues waived. Telebright Corp. v. Dir., N.J. Div. of Taxation, 424 N.J. Super. 384, 393 (App. Div. 2012) (finding appellant waived right to challenge an issue due to its failure to brief the issue); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2018).

This appeal followed. Worrell argues the trial court erred by: (1) imposing alimony obligations without proper analysis of the statutory alimony factors; (2) imposing an alimony obligation without conducting a plenary hearing despite the existence of genuine issues of material fact; (3) failing to find Kingman's claims are barred by the equitable defense of laches, equitable estoppel, or unclean hands; and (4) awarding counsel fees.

Our scope of review in this matter is limited. We will not overturn an alimony award unless

> we conclude the trial court clearly abused its discretion or failed to consider all of the controlling legal principles, or we must otherwise be satisfied that the findings were mistaken or that the determination could not reasonably have been reached on sufficient credible evidence present in the record after considering all of the proofs as a whole.
>
> [Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009) (citations omitted).]

8

We review legal issues de novo. Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017) (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Parties to a divorce action may enter into voluntary and consensual agreements governing the amount, terms, and duration of alimony. See Konzelman v. Konzelman, 158 N.J. 185, 194-95 (1999). Such agreements are subject to judicial supervision and enforcement. Petersen v. Petersen, 85 N.J. 638, 644 (1981) (citing Lepis v. Lepis, 83 N.J. 139, 148-49 (1980)).

Here, the parties agreed to a sum certain payable in five installments in lieu of permanent or limited durational alimony. Worrell acknowledges the $200,000 support obligation is fixed, but claims he was financially unable to make the required payments and cannot remit payments at the rate of $1000 per week.

We affirm the trial court's ruling ordering Worrell to pay Kingman $269,949, inclusive of interest at five percent. We part company with the trial court with regard to the repayment rate.

When alimony is requested, the trial court must consider and make specific findings regarding the applicable factors set forth in N.J.S.A. 2A:34-

23(b).[2] Gnall v. Gnall, 222 N.J. 414, 429 (2015). The same analysis is required when modifying the payment rate of a sum certain in lieu of support. N.J.S.A. 2A:34-23(b). "An alimony award that lacks consideration of the factors set forth in N.J.S.A. 2A:34-23(b) is inadequate . . . ." Crews v. Crews, 164 N.J. 11, 26 (2000). To be sure, the actual need and ability of the parties to pay is a fundamental factor when modifying an alimony order. See Miller v. Miller, 160 N.J. 408, 420 (1999) (stating "[i]n an application brought by a supporting spouse for a downward modification of alimony, . . . the central issue is the supporting spouse's ability to pay."). See also Pasqua v. Council, 186 N.J. 127 (2006).

---

[2] N.J.S.A. 2A:34-23(b) requires a court considering an alimony award to address the following factors: (1) the actual need and ability of the parties to pay; (2) the duration of the marriage; (3) the age, physical and emotional health of the parties; (4) the standard of living established in the marriage and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other; (5) the earning capacities, educational levels, vocational skills, and employability of the parties; (6) the length of absence from the job market of the party seeking maintenance; (7) the parental responsibilities for the children; (8) the time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; (9) the history of the financial or non-financial contributions to the marriage by each party; (10) the equitable distribution of the property; (11) the income available to either party through investment of any assets held by that party; (12) the tax treatment and consequences to both parties of any alimony award; (13) the nature, amount, and length of pendent lite support paid, if any; and (14) any other factors which the court may deem relevant.

A-3990-16T1

The trial court determined it need not apply the statutory factors, concluding the factors need only be applied when determining an appropriate amount of alimony. While the court is correct that the total amount to be paid in lieu of alimony had been established by agreement, the duration and rate of payment was not established in the event of default.

The trial court ordered Worrell to pay the $269,949 at the rate of $1000 per week, the rate requested by Kingman, without considering Worrell's ability to afford that payment rate in light of his income level and assets as they existed at the time the motion was decided. Nor did the court consider Kingman's financial need for payment at that rate.[3] Instead, the court treated the motion as merely enforcing the JOD, setting a new payment rate and duration without considering the applicable statutory factors. The repayment rate hinges on the actual need of the dependent spouse and the supporting spouse's ability to pay. N.J.S.A. 2A:34-23(b)(1).

The trial court also failed to fulfill its obligation to make findings of fact and to state reasons in support of its conclusions. R. 1:7-4. "A [court] must fully and specifically articulate findings of fact and conclusions of law." Heinl

---

[3] We recognize the judge was thwarted from doing so because neither party provided a current CIS, income tax returns, pay stubs, or other financial information necessary to fully engage in such an analysis.

A-3990-16T1

v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996) (citing Curtis v. Finneran, 83 N.J. 563, 570 (1980)).

For these reasons, the trial court should have granted reconsideration of the payment rate it set. We are constrained to vacate and remand the repayment rate set by the court and the enforcement by way of wage execution through the Probation Department. The remand court shall require the parties to submit current CISs, recent federal and state income tax returns, with attachments, and recent pay stubs. See R. 5:5-2(a); Family Part Case Information Statement, Pressler & Verniero, Appendix V to R. 5:5-2, www.gannlaw.com (2018). We leave it to the sound discretion of the remand court to determine if discovery will be permitted pursuant to Rule 5:5-1, and whether to conduct a plenary hearing. See Lepis, 83 N.J. at 159.

We next consider Worrell's contention that the counsel fee award must be vacated because the trial court erred by not analyzing the factors required by Rule 5:5-3(c), and by failing to state factual findings and conclusions of law in violation of Rule 1:7-4(a). We agree.

Rule 5:3-5(c), Rule 4:42-9(a), N.J.S.A. 2A:34-23, and interpretative case law "clearly outline necessary considerations when imposing a counsel fee award." Ricci, 448 N.J. Super. at 580 (citing Mani, 183 N.J. at 94-95). In

exercising its discretion, the trial court must abide by N.J.S.A. 2A:34-2<u>3</u>, requiring consideration of "the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." <u>Mani</u>, 183 N.J. at 94 (quoting N.J.S.A. 2A:34-23). <u>Rule</u> 5:3-5(1)(c), in turn, requires the trial court to consider the following factors when determining an award of counsel fees on any claim for alimony or enforcement of interspousal agreements:

> In determining the amount of the fee award, the court should consider, in addition to the information required to be submitted pursuant to <u>R.</u> 4:42–9, the following factors: (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

> [<u>Ibid.</u>]

Therefore, when considering a counsel fee application, the motion court

> must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party <u>in pursuing or defending</u> the action;

> the nature and extent of the services rendered; and the reasonableness of the fees.
>
> [Mani, 183 N.J. at 94-95 (citations omitted).]

If the court performs its obligation under the statute and rules, and there is "satisfactory evidentiary support for the trial court's findings, 'its task is complete and [a reviewing court] should not disturb the result, even though it . . . might have reached a different conclusion were it the trial tribunal.'" Reese, 430 N.J. Super. at 568 (quoting Beck v. Beck, 86 N.J. 480, 496 (1981)). Conversely, a remand is appropriate if the trial court fails to adequately explain an award or denial of counsel fees. See Giarusso v. Giarusso, 455 N.J. Super. 42, 54 (App. Div. 2018); Loro v. Colliano, 354 N.J. Super. 212, 227 (App. Div. 2002).

"Trial judges are under a duty to make findings of fact and to state reasons in support of their conclusions." Heinl, 287 N.J. Super. at 347 (citing R. 1:7-4). "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)). "Naked conclusions do not satisfy the purpose of [Rule] 1:7-4." Curtis, 83 N.J. at 570.

A-3990-16T1

Here, the court failed to make the necessary findings of fact and conclusions of law for the counsel fee award. We again recognize the court was thwarted from doing so because the parties did not provide sufficient information necessary to fully engage in such an analysis. While the failure to provide such information would normally preclude an award of fees, the JOD rendered Worrell responsible for Kingman's counsel fees and costs for successfully enforcing the judgment. Moreover, "it is not uncommon for this court on remand to allow curing of the defect." Giarusso 455 N.J. Super. at 54 (citing Kingsdorf v. Kingsdorf, 351 N.J. Super. 144, 159 (App. Div. 2002)).

We conclude a remand is required as to counsel fees. The counsel fee award is vacated and remanded to the Family Part for a new determination of counsel fees. On remand, the judge shall make specific findings of fact and conclusions of law in compliance with Rule 1:7-4. We express no opinion as to the appropriate counsel fee award in this matter.

We affirm the rejection of Worrell's argument that Kingman's claims were barred by the equitable defenses of laches, equitable estoppel, and unclean hands substantially for the reasons expressed by the trial court in its written decision. The argument for applying such equitable defenses lacks sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-3990-16T1

In sum, we affirm that aspect of the February 24, 2017 order requiring Worrell to pay Kingman tax free alimony of $261,949. We vacate those aspects of the order requiring that amount to be paid at the rate of $1000 per week, ordering the Probation Department to intercept any federal or state tax refunds Worrell may receive, and awarding Kingman $2590 in attorney's fees, and remand for further proceedings consistent with this opinion. The denial of reconsideration is rendered moot by our decision. We affirm the remaining aspects of the April 28, 2017 order.

Affirmed in part and vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3990-16T1